UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FRANK T. POERIO, JR.,**<br><br>**Defendant.** | Civil Action No. 2:24-cv-700<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff United States Securities and Exchange Commission ("SEC") alleges for its Complaint against Frank T. Poerio, Jr. ("Poerio" or "Defendant") as follows:

**SUMMARY**

1. This action concerns unlawful insider trading in the securities of Dick's Sporting Goods, Inc. ("Dick's Sporting Goods"), by Poerio between November 2019 and May 2021, based on material, nonpublic information concerning the company's quarterly revenue figures that he misappropriated from Individual A. In breach of his duty of trust and confidence to Individual A, Poerio misused this material, nonpublic information to purchase common stock and options of Dick's Sporting Goods in advance of the company's quarterly announcements. As a result of his illicit trading, Poerio realized overall profits of approximately $823,367.

2. By engaging in the conduct alleged herein, Poerio violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Exchange Act Rule

10b-5 [17 C.F.R. § 240.10b-5]. Accordingly, the SEC seeks a permanent injunction, disgorgement with prejudgment interest, and a civil penalty.

3. Unless Defendant Poerio is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to Section 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1].

5. This Court has jurisdiction over this action under Sections 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1, and 78aa].

6. Defendant Poerio can be found and conducted business in, and resides in, the Western District of Pennsylvania. Defendant Poerio directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices, and course of business alleged herein.

7. Venue in this district is proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa(a)]. More specifically, certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Western District of Pennsylvania and elsewhere, and were effected, directly or indirectly, by making use of the means, instruments, or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange.

## DEFENDANT

8. **Frank T. Poerio, Jr.**, age 62, resides in Gibsonia, Pennsylvania.

## RELEVANT ENTITY

9. **Dick's Sporting Goods, Inc.**, is a sporting goods retailer incorporated in Delaware with its principal place of business in Coraopolis, Pennsylvania. Shares of its common stock are registered pursuant to Section 12(b) of the Exchange Act and trade on the New York Stock Exchange under the symbol "DKS." Its options trade on several exchanges, including NYSE American Options and Cboe Exchange, Inc.

## FACTS

10. At all times relevant to this Complaint, including the period in which he traded in the securities of Dick's Sporting Goods between November 2019 and May 2021 (the "Relevant Period"), Poerio knew Individual A, an employee of Dick's Sporting Goods, whose role at the company included, among other things, supporting internal operations and others by providing detailed analyses of in-store staffing and corresponding business results, and using analytical tools and techniques to evaluate labor productivity to recommend the optimization of store labor investment.

11. The nature of the employment with Dick's Sporting Goods provided Individual A with access to multiple internal sources of material, nonpublic information about Dick's Sporting Goods's financial results. For example, Individual A received a "Daily Sales Report," which provided up-to-date statistics for each of Dick's Sporting Goods's store locations.

12. In addition to receiving the daily report described above, Individual A had access to multiple databases that included MNPI about the company's sales and revenue. The Dick's Sporting Goods database that he accessed most frequently was the "ERA - KPI 2.0" database which, according to Dick's Sporting Goods, provided audited sales for two full years, plus the current year, viewable by time buckets of day, week to date, month to date, quarter to date,

season to date, and year to date. It also included the prior day's inventory, the prior week's inventory, and corresponding previous year's inventory.

13. The second most frequently accessed database was the "OPS – Sales Analysis" database. According to Dick's Sporting Goods, this database provided a summary of the total company audited sales for brick-and-mortar stores, web, and omni sales for the current year and the previous year. Sales could be viewed at a store and sub-class level. The application also had reports that showed sales by geographic location, services-specific sales, fast sellers, and zero sales. The application also showed sales against budget. Individual A regularly accessed one or both databases.

14. At all times relevant to this Complaint, Individual A was subject to Dick's Sporting Goods's Code of Ethics and Business Conduct (the "Code"), which specifically stated that employees were prohibited from trading, personally or for others, based on material, nonpublic information; the Code also specifically prohibited employees from communicating material, nonpublic information about Dick's Sporting Goods to anyone outside the company. Individual A was familiar with the contents of the Code, completed annual training on it, and agreed annually via certification to follow it.

15. In addition to the Code, at all times relevant to this Complaint, Individual A was subject to Dick's Sporting Goods's Insider Trading Policy, which required employees to maintain the confidentiality of material nonpublic information and listed as a specific example of such quarterly earnings information and other financial information that a reasonable investor would consider important in deciding whether to buy, sell, or hold Dick's Sporting Goods securities.

16. Poerio had a longstanding relationship of trust and confidence with Individual A, which preceded Individual A's employment with Dick's Sporting Goods.

17.     Through frequent discussions between the two, Poerio came to know that Individual A's employment with the company provided him with access to material, nonpublic information about Dick's Sporting Goods's revenue.

18.     During the time of Individual A's employment with Dick's Sporting Goods, Poerio frequently asked Individual A for updates on the company's performance, despite knowing that insider trading was illegal. On some occasions, Individual A responded by telling Poerio that such information could not be disclosed.

19.     On other occasions, however, Individual A made statements to Poerio to the effect that the company was "doing very well," and then reiterated requests that Poerio not trade in the securities of Dick's Sporting Goods. Poerio understood that these statements about the company's performance were based on Individual A's access to nonpublic revenue numbers, and that they provided a preview of the company's upcoming quarterly financial reports.

20.     Poerio misused this information to trade in the securities of Dick's Sporting Goods, in breach of his duty of trust and confidence to Individual A.

21.     Poerio had never traded in the securities of Dick's Sporting Goods prior to the start of Individual A's employment with that company. Nevertheless, within months of Individual A starting at the company, Dick's Sporting Goods soon became Poerio's largest stock holding, both in terms of dollar amount and percentage of his portfolio.

22.     Between November 22, 2019, and May 28, 2021, Frank Poerio bought 59,545 shares of Dick's Sporting Goods common stock and 1,362 call contracts (each for 100 shares of stock), as well as sold short 436 put contracts (each for 100 shares of stock), all of which trades were made with the expectation that the price of Dick's Sporting Goods stock would increase.  Poerio made each of these trades at a time when he was in communication with

Individual A, from whom Poerio misappropriated the information, at a time when Individual A had access to MNPI about the real-time revenue figures of Dick's Sporting Goods. As a result, Poerio profited in the amount of $823,367.

23. Poerio's trading of Dick's Sporting Goods securities frequently intensified both before and after Dick's quarterly release of earnings reports.

24. For example, in advance of Dick's Sporting Goods's August 26, 2020, earnings announcement for the second quarter of 2020, Poerio and Individual A spoke on the phone at least 30 times, a number which does not include texts or in-person meetings. Poerio misappropriated material, nonpublic information concerning Dick's Sporting Goods's quarterly revenue figures from Individual A during this period.

25. In the lead up to this announcement, Poerio increased his position in Dick's Sporting Goods and purchased $637,450 worth of Dick's Sporting Goods stocks and options, reaching a peak of 24,811 shares on August 26, 2020, the day of the earnings announcement. Much of this increase occurred in the days leading up to the earnings announcement, as Poerio purchased approximately 10,000 shares and 223 call options between August 19, 2020, and August 25, 2020. Poerio funded his purchase, in part, by selling shares of other securities.

26. As of the morning of August 26, 2020, the day of the earnings announcement, Poerio held approximately 24,811 shares and share equivalents of Dick's Sporting Goods. On that day, Dick's Sporting Goods announced earnings of $3.12 per share, which exceeded market expectations by over 250%. As a result, the price of Dick's Sporting Goods stock increased by 15.7% over the prior day's closing price. Poerio's realized profit from trading during this period was $180,221.

27. In another example, Poerio traded in advance of Dick's Sporting Goods's November 24, 2020, earnings announcement for the third quarter of 2020. Poerio and Individual A spoke on the phone at least 122 times, a number which does not include texts or in-person meetings. Poerio misappropriated material, nonpublic information concerning Dick's Sporting Goods's quarterly revenue figures from Individual A during this period.

28. In advance of Dick's Sporting Goods's November 24, 2020, earnings announcement for the third quarter of 2020, Poerio increased his position in Dick's Sporting Goods and purchased approximately $584,623 worth of Dick's Sporting Goods shares. The vast majority of this increase occurred in the two-week period leading up to the earnings announcement.

29. The value of Poerio's holdings in the securities of Dick's Sporting Goods increased on November 24, 2020. On that day, Dick's Sporting Goods announced earnings of $2.01 per share, which exceeded market expectations by over about 100%. The market closed on November 24 at $58.99 per share (up 0.31% over prior day's close at $58.81), and it closed the following day at $60.06 a share (2.1% above the November 23, 2020 closing price). Poerio's realized profit on trading conducted during this period was $105,038.

30. During the Relevant Period, Poerio did not tell Individual A that he had purchased securities of Dick's Sporting Goods.

## CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5 Thereunder

31.     The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30.

32.     By engaging in the conduct described above, Defendant Poerio, directly or indirectly, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly and recklessly (i) employed one or more devices, schemes, or artifices to defraud; (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts, necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in one or more acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

33.     By reason of the foregoing, Defendant Poerio, directly or indirectly, violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Defendant Poerio and his agents, servants, employees and attorneys and all persons in active concert or participation with Defendant Poerio

from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Ordering Defendant Poerio to disgorge all ill-gotten gains received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations pursuant to Exchange Act Sections 21(d)(3), (5), (7) [15 U.S.C. §§ 78u(d)(3), (5), (7)];

## III.

Ordering Defendant Poerio to pay a civil monetary penalty under Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

**IV.**

Granting any other and further relief this Court may deem just and proper.

Date:  May 10, 2024                                    Respectfully submitted,


  /s/ Derek Bentsen
Derek Bentsen
James Carlson
Jason Litow
Kevin Guerrero
Attorneys for Plaintiff:
U.S. SECURITIES AND EXCHANGE
COMMISSION
Division of Enforcement
100 F Street, N.E.
Washington, DC 20549
Phone: (202) 551-6426 (Bentsen)
Email: bentsend@sec.gov (Bentsen)